UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CONSTANTINEE L. JACKSON,

                          Plaintiff,

                                                          9:05-CV-1393
v.                                                        (TJM/GHL)

ONONDAGA COUNTY; ANTHONY CALLISTO, JR.,
Chief Custody Deputy, Onondaga County Jail; and
CHERYL SPINA, Deputy, Onondaga County Jail,

                          Defendants.
_____

APPEARANCES:                           OF COUNSEL:

CONSTANTINEE L. JACKSON, 04-B-3073
  Plaintiff, *Pro Se*
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

HON. ANTHONY RIVIZZIGNO             KATHLEEN M. DOUGHERTY, ESQ.
Onondaga County Attorney            Deputy County Attorney
  Counsel for Defendants
421 Montgomery Street, 10th Floor
Syracuse, NY 13202

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This prisoner civil rights action, commenced *pro se* by Mr. Constantinee L. Jackson

("Plaintiff") pursuant to 42 U.S.C. § 1983, has been referred to me for Report and

Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge,

pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Liberally construed, Plaintiff's

Complaint alleges that, in February and March of 2004, two employees of the Onondaga County

Jail–Chief Custody Deputy Anthony Callisto, Jr., and Deputy Cheryl Spina ("Defendants")–

violated Plaintiff's rights under the First, Eighth and/or Fourteenth Amendments when (1)

Defendant Spina filed a false disciplinary report charging Plaintiff with assault, in retaliation for

Plaintiff's having embarrassed her by calling her "ugly," causing Plaintiff to be convicted of that

charge and illegally confined to the Special Housing Unit at the Onondaga County Jail for a

period of forty-nine days without life's basic necessities, and (2) Defendant Callisto failed to

prevent either the duration or conditions of that incarceration.  (*See generally* Dkt. No. 1 [Plf.'s

Compl.].)

Currently pending before the Court is Defendants' motion for summary judgment

pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 52.)  Generally, Defendants' motion is premised on the

following alternative grounds: (1) Plaintiff's failure to allege facts plausibly suggesting any

constitutional violations; (2) Plaintiff's failure to adduce evidence establishing any constitutional

violations; (3) the principles of limited municipal liability established by *Monell v. Dept. of Soc.

Servs.*, 436 U.S. 658 (1978), and its progeny; (4) the doctrine of collateral estoppel; and/or (5) the

doctrine of qualified immunity.  (*See generally* Dkt. No. 52, Part 10 [Defs.' Mem. of Law].)  For

the reasons that follow, I recommend that Defendants' motion be granted, and that Plaintiff's

Complaint be dismissed in its entirety with prejudice.

## I.      APPLICABLE LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted

if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining

whether a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[2]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[3]  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[4]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent

---

[1]      A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[2]      *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[3]      Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[4]      Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . ."); *Matsushita*, 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[5]      *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

review of the record to find proof of a factual dispute,[6] even if that non-movant is proceeding *pro se*.[7]  In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit.[8]  (Here, I note that Plaintiffs' Complaint contains a verification pursuant to 28 U.S.C. § 1746.[9])  In any event, to be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit must, among other things, not be conclusory.[10]  An affidavit is conclusory if, for example, its assertions

---

[6]        *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord*, *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[7]        *See Lee v. Alfonso*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment against *pro se* plaintiff after refusing to conduct independent review of record to find proof of factual dispute), *aff'd*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004) (unpublished decision); *accord*, *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.).

[8]        *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

[9]        (*See* Dkt. No. 1, at 7 [Plf.s Compl.].)

[10]       *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir. 1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

lack any supporting evidence or are too general.[11]  Finally, even where an affidavit (or verified complaint) is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."[12]

---

[11]     *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

[12]     *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789, 2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony

**B.      Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)**

To the extent that a defendant's motion for summary judgment under Rule 56 of the

Federal Rules of Civil Procedure is based entirely on the plaintiff's complaint,[13] such a motion is

functionally the same as a motion to dismiss for failure to state a claim under Rule 12(b)(6).  As

a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon

motion for summary judgment."  *Schwartz v. Compagnise General Transatlantique*, 405 F.2d

270, 273-74 (2d Cir. 1968) [citations omitted], *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38

(S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment

motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to

the parties.").

Moreover, even where a defendant has not advanced such a failure-to-state-a-claim

argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a

*pro se* prisoner has failed to state a claim upon which relief may be granted.[14]

---

recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence
or benign"), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as
precedential authority but merely to show the case's subsequent history, in accordance with
Second Circuit Local Rule § 0.23).

[13]      (*See*, *e.g.*, Dkt. No. 52, Part 10, at 6-7 [Defs.' Mem. of Law, arguing that
"Plaintiff's conclusory allegations fail to state a claim for relief."])

[14]      The authority to conduct this *sua sponte* analysis is derived from two sources: (1)
28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a
prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . .
is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . .
seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. §
1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's]
complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to
state a claim upon which relief may be granted . . . ."

For these reasons, it is appropriate to briefly summarize the legal standard governing Rule 12(b)(6) motions to dismiss.  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[15] or (2) a challenge to the legal cognizability of the claim.[16]

---

[15]      *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[16]      *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-02 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[17]  The purpose of this rule is to "facilitate a proper decision on the merits."[18]  A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[19]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[20]  However, it is well established that even this

---

the claims).

[17]     *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 [1957]); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[18]     *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[19]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[20]     *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

liberal notice pleading standard "has its limits."[21]  As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[22]

Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69 (2007).[23]  Rather than turning on the

---

[21]      2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[22]      *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-74 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-35, *Christopher v. Harbury*, 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-35 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-09 (2d Cir. 2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[23]      The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Twombly*, 127 S. Ct. at 1969.

*conceivability* of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id*. at 1965-74. More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id*. at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id*.; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[24] Moreover, it should be noted that "[t]his standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[25] In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are generally to be construed with an *extra*

---

[24]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[25]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

10

degree of liberality.  Indeed, generally "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[26]  In addition, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[27]

However, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[28]  For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[29]

---

[26]    *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[27]    *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[28]    *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord*, *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz*, 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins*, 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[29]    *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice)

II.     **ANALYSIS**

    A.     **Failure to State a Claim**

        1.     **First Amendment**

Claims of retaliation like those asserted by Plaintiff find their roots in the First

Amendment.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).  Central to such

claims is the notion that in a prison setting, corrections officials may not take actions which

would have a chilling effect upon an inmate's exercise of First Amendment rights.  *See Gill*, 389

F.3d at 381-383.  Because of the relative ease with which claims of retaliation can be incanted,

however, courts have scrutinized such retaliation claims with particular care.  *See Flaherty v.*

*Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are
> difficult to dispose of on the pleadings because they involve questions
> of intent and are therefore easily fabricated.  Second, prisoners' claims
> of retaliation pose a substantial risk of unwarranted judicial intrusion
> into matters of general prison administration.  This is so because
> virtually any adverse action taken against a prisoner by a prison
> official--even those otherwise not rising to the level of a constitutional
> violation--can be characterized as a constitutionally proscribed
> retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other*

*grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prove a First Amendment claim under 42 U.S.C. § 1983, a Plaintiff must establish the

following: (1) that the speech or conduct at issue was "protected"; (2) that the defendants took

"adverse action" against the plaintiff–namely, action that would deter a similarly situated

individual of ordinary firmness from exercising his or her constitutional rights; and (3) that there

_____

[citation omitted].

was a causal connection between the protected speech and the adverse action--in other words,

that the protected conduct was a "substantial or motivating factor" in the defendants' decision to

take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S.

274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d. Cir.

2001]).  Under this analysis, adverse action taken for both proper and improper reasons may be

upheld if the action would have been taken based on the proper reasons alone.  *Graham v.

Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

   Here, the speech or conduct that Plaintiff alleges he was engaging in when Defendant

Spina retaliated against him consisted of Plaintiff stating to Defendant Spina, "My attorney Ralph

Habib said stop asking about him.  He said your [sic] ugle [sic]."  (Dkt. No. 1, ¶ II.D. [Plf.'s

Compl.].)  I know of no case law that would support a conclusion that such speech or conduct

*against a prison guard* is protected by the First Amendment.[30]  Indeed, the instructive cases that I

have found are quite to the contrary.  For example, in *Brooks v. Miles*, the Southern District held

> The uncontroverted evidence in this case, including Brooks' own
> admissions, makes clear that Brooks' profane language, and
> confrontational speech and conduct [against correctional staff] placed
> him in violation of valid prison regulations–thus placing his speech
> and conduct outside the protection of the First Amendment, and
> providing defendants with legitimate, non-retaliatory reasons for
> disciplining him. . . .  Brooks does not argue, nor could he, that he has
> a First Amendment right, as a prisoner, to use obscene, disrespectful
> language in addressing correctional staff . . . .

*Brooks v. Miles*, 98-CV-5763, 2001 U.S. Dist. LEXIS 10677, at *16-17, 19 (S.D.N.Y. May 10,

---

[30]    I note that case law exists permitting a certain level of abusive speech against arresting police officers outside of the prison walls.

2001), *adopted*, 210 F. Supp.2d 290 (S.D.N.Y. 2001).[31]

Even if Plaintiff had alleged facts plausibly suggesting that he had engaged in speech or conduct that was protected by the First Amendment, he has alleged no facts plausibly suggesting that Defendant Callisto took, or was personally involved in, any *adverse action* against him. (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

For these reasons, I recommend that the Court dismiss Plaintiff's First Amendment claim against Defendants for failure to state a claim. Furthermore, because I find that the defects in his First Amendment claim are substantive rather than merely formal, I recommend that the dismissal be with prejudice.

### 2.     Eighth Amendment

Generally, to prevail on a claim of inadequate prison conditions, a plaintiff must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious*; and (2) that the defendant acted with *deliberate indifference* to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005).

Here, Plaintiff alleges that he was confined in the Special Housing Unit at the Onondaga County Jail for forty-nine days "without my needs, personal property, etc." (Dkt. No. 1, ¶ II.A. [Plf.'s Compl.].) However, Plaintiff does not allege facts plausibly identifying those "needs" or

---

[31]     *See also Reeves v. Hogle*, 04-CV-0147, 2006 U.S. Dist. LEXIS 12680, at *16 (W.D. Mich. Jan. 17, 2006) (profane and threatening language by prisoner against guards was not protected speech for purposes of First Amendment retaliation claim); *cf. Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942) ("Resort to epithets or personal abuse is not in any proper sense communication or information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.") [internal quotation marks and citation omitted].

that "personal property," rendering his allegation almost entirely conclusory in nature.  I find that, as a matter of law, the conditions of confinement alleged by Plaintiff, coupled with the duration of that confinement, does not rise to the level of a deprivation that is sufficiently serious for purposes of the Eighth Amendment.  "As recognized by the Supreme Court in *Rhodes* [*v. Chapman*], 'the Constitution does not mandate comfortable prisons,' . . . and conditions that are 'restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society.'"  *Davidson*, 371 F. Supp.2d at 370 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 [1981]).

Even if Plaintiff had alleged facts plausibly suggesting that he experienced confinement that was sufficiently serious for purposes of the Eighth Amendment, he has alleged no facts plausibly suggesting that Defendant Callisto acted with *deliberate indifference* to the plaintiff's health or safety, or was personally involved in Plaintiff's confinement in the Special Housing Unit.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)  I note that "deliberate indifference describes a state of mind more blameworthy than negligence,"[32] one that is "equivalent to criminal recklessness."[33]

---

[32]     *Farmer*, 511 U.S. at 835; *see also Murphy v. Grabo*, 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.").

[33]     *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .") [citation omitted]; *cf. Farmer,* 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal

For these reasons, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim against Defendants for failure to state a claim.  Furthermore, because I find that the defects in his Eighth Amendment claim are substantive rather than merely formal, I recommend that the dismissal be with prejudice.

### 3.      Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component.  *Zinernon v. Burch*, 494 U.S. 113, 125 (1990).  The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."  *Zinernon*, 494 U.S. at 125 [internal quotations marks and citation omitted].  The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . *without due process of law*."  *Id*. at 125-126 [internal quotations marks and citations omitted; emphasis in original].  One of the differences between the two claims is that a substantive due process violation "is complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process" (which may occur *after* the wrongful action in question).  *Id*.

Here, I do not liberally construe Plaintiff's Complaint as attempting to assert a substantive due process claim.  Even if I were to so construe that Complaint, I would conclude that it fails to state a viable substantive due process claim as a matter of law.  "Substantive due process protects individuals against government action that is arbitrary, . . . conscience-shocking, . . . or

---

law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment.").

oppressive in a constitutional sense, . . . but not against constitutional action that is [merely] incorrect or ill-advised." *Lawrence v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) [internal quotations marks and citations omitted], *aff'g*, 91-CV-1196, *Memorandum-Decision and Order* (N.D.N.Y. Jan. 26, 1993) (DiBianco, M.J.) (granting summary judgment to defendants in inmate's civil rights action).  Plaintiff has not alleged facts plausibly suggesting that his disciplinary conviction for assault (and the segregated confinement that resulted) was arbitrary in the constitutional sense, or even that it was reversed on appeal.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

Rather, I construe Plaintiff's Complaint as attempting to assert a procedural due process claim.  "[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Addressing the first of these two required showings, the United States Supreme Court has determined that, to establish a liberty interest, a plaintiff must sufficiently demonstrate both (1) that the confinement or restraint would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and (2) that the State actually created a protected liberty interest in being free from that confinement or restraint.  *Sandlin v. Conner*, 515 U.S. 472, 484 (1995); *Hynes v. Squillance*, 143 F.3d 653, 658 (2d Cir. 1998); *Ciaprazi v. Goord*, 02-CV-0915, 2005 WL 3531464, at *11 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J., adopting Report-Recommendation by Peebles, M.J.).  For the sake of argument, I will assume that New York State has, through its regulatory scheme, created a liberty interest in prisoners remaining free

from confinement in a Special Housing Unit.  The issue is whether the confinement at issue imposed on Plaintiff an "atypical and significant hardship . . .  in relation to the ordinary incidents of prison life."  Based on even a liberal construction of the allegations of Plaintiff's Complaint, I must answer that question in the negative.

"When determining whether a plaintiff possesses a cognizable liberty interest, district courts must examine the specific circumstances of confinement, including analysis of both the length and conditions of confinement."  *Ciaprazi,* 2005 WL 3531464, *11 [citations omitted].

Here, Plaintiff alleges that he was confined in the Special Housing Unit at the Onondaga County Jail for a period of forty-nine days.  (Dkt. No. 1, ¶¶ II.A., II.D. [Plf.'s Compl.].)  The problem is that both the Supreme Court and Second Circuit have made clear that a "short" period of disciplinary confinement (i.e., under 101 days) under generally "normal" conditions (i.e., even if some of those conditions are harsher than those in disciplinary confinement or the general population) usually does not rise to the level of atypicality.[34]

Moreover, Plaintiff does not allege facts plausibly suggesting that conditions of confinement he experienced in the Onondaga County Jail Special Housing Unit were conditions other than those normally associated with Special Housing Unit confinement in New York State.[35]  I note that restrictions on the possession of personal property and the receipt of visitors

---

[34]     *See*, *e.g.*, *Sandlin v. Conner*, 515 U.S. 472, 475-476, 486 (1995) (30 days of disciplinary confinement in SHU under conditions that mirrored those of normal administrative segregation "with insignificant exceptions" did not rise to the level of atypicality); *Sealey v. Giltner*, 197 F.3d 578, 589-590 (2d Cir. 1999) (101 days of disciplinary confinement in SHU under conditions that were "doubtless unpleasant and somewhat more severe than those of general population" did not rise to the level of atypicality).

[35]     *See Colon v. Howard*, 215 F.3d 227, 230 (2d Cir. 2000) (describing the following conditions as "normal" conditions of SHU confinement in New York: "Colon was placed in a

are common in Special Housing Units in New York State.[36]

      Finally, even if Plaintiff had alleged facts plausibly suggesting that, under the circumstances, he possessed a protected liberty interest for purposes of a Fourteenth Amendment procedural due process analysis, he has not alleged facts plausibly suggesting that Defendants (or anyone) failed to afford him all the process that he was due.  Under *Wolff v. McDonnell*, 418 U.S. 539 (1974), the constitutionally mandated due process requirements under the circumstances include: (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence, subject to legitimate safety and penological concerns; (3) a written statement by the hearing officer as to the evidence relied on for his decision, and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense.  *Wolff*, 418 U.S. at 564-67 (not expressly stating there is a right to "appear at the hearing").[37]  Plaintiff's Complaint is conspicuously devoid of factual allegations plausibly suggesting a deprivation of any of these procedural rights.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

---

solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day . . ., limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling.  Visitors were permitted, but the frequency and duration was less than in general population.  The number of books allowed in the cell was also limited.  As to duration, Colon was required to serve 305 days of the 360-day sentence imposed.") (citing N.Y.C.R.R. §§ 304.1-304.14).

[36]    *See Colon*, 215 F.3d at 230.

[37]    *See also Eng v. Coughlin*, 858 F.2d 889, 897-898 (2d Cir. 1988) (discussing limited right to legal assistance in certain circumstances, for example when plaintiff is confined full-time to SHU); *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986) (interpreting *Wolff* as finding due process right to "appear at the hearing" subject to legitimate safety and penological concerns).

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment claim against Defendants for failure to state a claim.  Furthermore, because I find that the defects in his Fourteenth Amendment claim are substantive rather than merely formal, I recommend that the dismissal be with prejudice.

### 4.    Effect of Plaintiff's New Factual Allegations

In his memorandum of law in opposition to Defendants' motion for summary judgment, Plaintiff asserts, for the first time in this action, several factual allegations fleshing out, somewhat, the allegations contained in his Complaint.  In particular, Plaintiff alleges the following four facts: (1) at some point in time, the hearing officer who presided over Plaintiff's disciplinary hearing (Deputy C. Cummletti) told Plaintiff that his "boss," Anthony Callisto, Jr., "came down on his [sic] as to punishing [Plaintiff] [sic] . . . .";[38] (2) Onondaga County (either through omissions by C. Cummletti or Defendant Callisto) "did not . . . investigat[] the merit or merits" of Defendant Spina's disciplinary charges against Plaintiff;[39] (3) during his confinement in the Onondaga County Jail's Special Housing Unit, he was "confined to a cell unsafe living order [sic] with 'human waste' on the floors, walls [sic]";[40] and (4) through the disciplinary charges and conviction to which he was subjected, Plaintiff was "singled out and treated differently from other prisoners in situations [sic]."[41]

I am mindful that, in cases where a *pro se* civil rights plaintiff is faced with a motion to

---

[38]    (Dkt. No. 54, Plf.'s Opp. Mem. of Law, at 2.)

[39]    (*Id*.)

[40]    (Dkt. No. 54, Plf.'s Opp. Mem. of Law, at 6 [quotation marks in original].)

[41]    (*Id*.)

dismiss for failure to state a claim, courts will often (out of special solicitude) consider materials outside the complaint to the extent they are consistent with the allegations in the complaint.[42] Here, as a threshold matter, I will set aside the fact that I previously found that Plaintiff's special solicitude should be somewhat diminished for the remainder of this action due to his considerable litigation experience.[43]  The more important problem Plaintiff faces is that it would be inappropriate to consider his four new factual allegations for two reasons: (1) the four new allegations are almost entirely inconsistent with the allegations of his Complaint (which is conspicuously silent as to the new facts);[44] and (2) the four new allegations are not made in response to a motion to dismiss (which typically occurs relatively early in an action, before discovery has occurred) but in response to a motion for summary judgment (after a fair and reasonable opportunity to conduct discovery has occurred).[45]  Simply stated, the net effect of permitting Plaintiff to so change the landscape of his claims at this late stage of the action would

---

[42]    *See, e.g., Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (Hurd, J.) ("[I]n cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'") [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004) (Hurd, J.).

[43]    (*See* Dkt. No. 50, at 10-11 [Order of Lowe, M.J., filed 2/6/07, finding that the special solicitude normally afforded *pro se* litigants should be diminished somewhat in Plaintiff's case due to his considerable litigation experience.].)

[44]    For example, with respect to Plaintiff's fourth new factual allegation, nowhere in his Complaint does he even hint at the assertion of an equal protection claim.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

[45]    *See Shaheen v. McIntyre*, 05-CV-0173, 2007 WL 3274835, at *1, 9 (N.D.N.Y. Nov. 5, 2007) (McAvoy, J., adopting report-recommendation that *pro se* civil rights plaintiff's complaint not be effectively amended by his new allegations presented in his response to defendants' motion for summary judgment, in part for same reason).

be to deprive Defendants of the fair notice envisioned by Fed. R. Civ. P. 8.  I note that the

Complaint in this action was filed on November 8, 2005, and discovery closed on December 20,

2006--after the granting of two deadline extensions.  (Dkt. Nos. 1, 13, 31, 39.)

Furthermore, even if the Court were to use the four new factual allegations to effectively

amend the allegations of Plaintiff's Complaint, those four new factual allegations would not,

either individually or cumulatively, save Plaintiff's claims from dismissal.  This is largely due to

the lack of detail in the factual allegations.

For example, with respect to the first new factual allegation, Plaintiff does not specify

when C. Cummletti made this statement to Plaintiff, or even that Defendant Callisto was in fact

pressuring C. Cummletti to find Plaintiff guilty of the disciplinary charges against him.

With respect to the second new factual allegation, Plaintiff does not specify who failed to

investigate the merits of Defendant Spina's disciplinary charges against Plaintiff.  I note that it is

not the duty of an impartial hearing officer to conduct such an investigation.[46]  Indeed, any such

involvement in an investigation would likely preclude him from serving as the hearing officer

due to a conflict of interest.[47]  In any event, Plaintiff does not specify how that individual so

---

[46]      Rather, the duty of a hearing officer is merely to review the evidence, and in
certain circumstances identify defense witnesses.  *See Martin v. Mitchell*, 92-CV-0716, 1995
U.S. Dist. LEXIS 19006, at *10-12 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (disciplinary
hearing officer had no duty to "investigate" the identity of a Correction Officer identified merely
as "Budd"); *Hampton v. McGinnis*, 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6 (S.D.N.Y.
Oct. 15, 1992) (disciplinary hearing officer had no duty to "investigate" defendant's assault
claim); *cf. Kingsley v. Bureau of Prisons*, 937 F.2d 26, 31 (2d Cir. 1991) (hearing officer had
duty to identify defense witness's name, only because defendant had a compelling need for the
witness, the witness's identity was readily available to hearing officer, and defendant was new to
the prison).

[47]      *See Silva v. Sanford*, 91-CV-1776, 1994 U.S. Dist. LEXIS 11568, at *38-41
(S.D.N.Y. Aug. 17, 1994) [citing cases].

22

failed to investigate the merits of the charges against Plaintiff.

With respect to the third new factual allegation, Plaintiff does not allege that any other poor living conditions existed in his cell, nor does he allege that, upon request, he was denied cleaning supplies to remove the "human waste" on the floors and walls of his cell.

With respect to the fourth new factual allegation, Plaintiff does not allege any facts plausibly suggesting either that (1) he was a member of an identifiable or suspect class or (2) he was intentionally treated differently from others similarly situated as a result of his membership in that identifiable or suspect class.

For these reasons, the four late-blooming factual allegations in Plaintiff's memorandum of law do not change my recommendation that the Court dismiss Plaintiff's First, Eighth and Fourteenth Amendment claims against Defendants for failure to state a claim.

### B.      Failure to Adduce Evidence Sufficient to Create Question of Fact

Even if the Court were to look beyond the face of Plaintiff's Complaint to the record evidence adduced by the parties on Defendants' motion for summary judgment, the Court would find insufficient evidence to create a material issue of fact.

More specifically, with respect to Plaintiff's First Amendment claim, he has adduced no evidence establishing that (1) the speech or conduct that he was engaging in when Defendant Spina (allegedly) retaliated against him was "protected" for purposes of the First Amendment, (2) Defendant Callisto took, or was personally involved in, any adverse action against him, and (3) Plaintiff's disciplinary conviction (and Special Housing Unit confinement) were caused by any protected speech or conduct.  (*See generally* Dkt. No. 54 [Plf.'s Response Papers]; Dkt. No. 1

[Plf.'s Verified Compl.].)[48]

With respect to Plaintiff's Eighth Amendment claim, he has adduced no evidence establishing that (1) the conditions of his confinement in the Onondaga County Jail Special Housing Unit, coupled with the duration of that confinement, rose to the level of a deprivation that is sufficiently serious for purposes of the Eighth Amendment, (2) Defendant Callisto acted with deliberate indifference to the plaintiff's health or safety, or was personally involved in Plaintiff's confinement in the Special Housing Unit, or (3) Defendant Spina caused, or even knew about, the (allegedly) inadequate conditions of Plaintiff's confinement in the Special Housing Unit. (*Id*.)

Finally, with respect to Plaintiff's Fourteenth Amendment claim, he has adduced no evidence establishing that (1) the confinement he experienced in the Onondaga County Jail Special Housing Unit created a protected liberty interest for purposes of the Fourteenth Amendment, or (2) he was denied any of the procedural protections that he was due under the circumstances. (*Id*.) Indeed, the available record evidence suggests that he was afforded all of the procedural protections that he was due. (*See*, *e.g.*, Dkt. No. 52, Part 4, at 14-31 [Ex. B to Dougherty Affid., attaching relevant Hearing Notice, Incident Report, Inmate Misbehavior Report, Supplemental Report, Hearing Report, and Hearing Results].)

For all of these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint in its entirety under Fed. R. Civ. P. 56.

---

[48]     I note that the four factual allegations asserted in Plaintiff's opposition memorandum of law, discussed above in Part II.A.4. of this Report-Recommendation, are unsworn and thus do not constitute evidence for purposes of a motion for summary judgment.

### C.    Municipal Liability

In the alternative, Defendants argue that the Court should dismiss Plaintiff's claims against Defendant Onondaga County because Plaintiff has neither alleged facts plausibly suggesting, nor adduced evidence establishing, that the violation of his constitutional rights resulted from a municipal policy or custom.  (*See* Dkt. No. 52, Part 10, at 7-9 [Defs.' Mem. of Law].)  Plaintiff fails to respond to this argument in his memorandum of law.  (*See generally* Dkt. No. 54, Plf.'s Opp. Mem. of Law.)

Where a plaintiff has failed to respond to a defendant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the plaintiff is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court.[49]  Stated another way, where a defendant has properly filed a memorandum of law (in support of a properly filed

---

[49]    N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown."); N.D.N.Y. L.R. 7.1(a) (requiring opposition to motion for summary judgment to contain, *inter alia*, a memorandum of law); *cf*. Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response* . . . must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so *respond*, summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added]; *see*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

motion for summary judgment), and the plaintiff has failed to respond to that memorandum of law, the only remaining issue is whether the legal arguments advanced in the defendant's memorandum of law are *facially meritorious*.[50]  A defendant's burden in making legal arguments that are facially meritorious has appropriately been characterized as "modest."[51]

Here, I find that Defendants' "lack of policy" argument is, at the very least, facially meritorious.  Even if I were to subject that argument to more rigorous scrutiny, I would still find that argument to be persuasive.

---

[50]      *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") [emphasis added; citations omitted]; *accord, Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n.43 (N.D.N.Y. March 22, 2007) (Lowe, M.J.); *Hynes v. Kirkpatrick*, 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, at *5-6 & n.2 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, at *28-29 & n.40 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n.2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

[51]      *See Ciaprazi v. Goord*, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986)]; *accord, Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *9 & n.60 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), *Smith v. Woods*, 03-CV-0480, 2006 WL 1133247, at *17 & n.109 (N.D.N.Y. Apr. 24, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.); *cf. Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello*, 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

It is well established that "[a] municipality may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior*."[52] "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy."[53] "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to . . . prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."[54]

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy

---

[52]      *Powell v. Bucci*, 04-CV-1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov. 30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior*.").

[53]      *Powell*, 2005 WL 3244193, at *5; *Monell*, 436 U.S. at 690-691 ("[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista*, 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York*, 290 F. Supp.2d 317, 321 (S.D.N.Y. 2003) ("In order to establish the liability of [municipal] defendants in an action under § 1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[54]      *Batista*, 702 F.2d at 397, *accord*, *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995), *McKeon v. Daley*, 101 F. Supp.2d 79, 92 (N.D.N.Y. 2000) (Hurd, J.), *Merriman v. Town of Colonie, NY*, 934 F. Supp. 501, 508 (N.D.N.Y. 1996) (Homer, M.J.); *Douglas v. County of Tompkins*, 90-CV-0841, 1995 WL 105993, at *12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. County of Albany*, 594 F. Supp. 1147, 1156 (N.D.N.Y. 1984) (Miner, J.).

27

officially endorsed by the municipality . . . ; (2) actions taken by government officials responsible

for establishing municipal policies related to the particular deprivation in question . . . ; (3) a

practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute

constructive knowledge to the practice of policymaking officials . . . ; or (4) a failure by

policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate

indifference' to the rights of those who come in contact with the municipal employees. . . ."[55]

With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an

affirmative link" between the municipal policy or custom and the alleged constitutional

deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation).[56]

---

[55]     *Dorsett-Felicelli, Inc.*, 371 F. Supp.2d 183, 194 (N.D.N.Y. 2005) (Kahn, J.)
(citing three Supreme Court cases for these four ways), *accord*, *Dunbar v. County of Saratoga*,
358 F. Supp.2d 115, 133-134 (N.D.N.Y. 2005) (Munson, J.); *see also Clayton v. City of
Kingston*, 44 F. Supp.2d 177, 183 (N.D.N.Y. 1999) (McAvoy, J.) (transposing order of second
and third ways, and citing five more Supreme Court cases).

[56]     *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("[O]ur first inquiry
in any case alleging municipal liability under § 1983 is the question whether there is a direct
causal link between a municipal policy or custom and the alleged constitutional deprivation.");
*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, n.8 (1985) ("The fact that municipal 'policy'
might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the
particular policy be the 'moving force' behind a constitutional violation.  There must at least be
an affirmative link between [for example] the training inadequacies alleged, and the particular
constitutional violation at issue."); *Monell*, 436 U.S. at 694 ("[I]t is when execution of a
government's policy or custom . . . inflicts the injury that the government as an entity is
responsible under § 1983.  Since this case unquestionably involves official policy as the moving
force of the constitutional violation [at issue] . . . we must reverse the judgment below.");
*Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who seeks to hold
a municipality liable in damages under section 1983 must prove that . . . an official policy or
custom [was] the cause of the deprivation of constitutional rights. . . . [T]he plaintiff must
establish a causal connection–an affirmative link–between the policy and the deprivation of his
constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez*, 702
F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or
custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City.");
*Powell*, 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link

For the sake of brevity, I will set aside the issues concerning causation and focus solely on the issues concerning the existence of a relevant policy or custom.  Defendants are correct that Plaintiff's Complaint is devoid of factual allegations plausibly suggesting (1) a formal policy officially endorsed by Onondaga County, (2) actions taken by Onondaga County officials responsible for establishing County policies related to the particular deprivation in question, (3) a practice so consistent and widespread that it constitutes a "custom or usage" sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise deputies working in the Onondaga County Jail to such an extent that it amounts to deliberate indifference to the rights of inmates incarcerated in the Onondaga County Jail.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)  Defendants are also correct that Plaintiff has adduced no evidence establishing any of these four things.  (*See generally* Dkt. No. 54 [Plf.'s Response Papers]; Dkt. No. 1 [Plf.'s Verified Compl.].)

For all of these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's claims against Defendant Onondaga County due to the principles of limited municipal liability set forth by *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), and its progeny.

### D.      Doctrine of Collateral Estoppel

Because I have already concluded that adequate grounds exist upon which to base a recommendation of dismissal of Plaintiff's Complaint, I need not reach the merits of Defendants' alternative argument in favor of dismissal, namely, their collateral estoppel argument.  I will only pause to make two observations.

---

between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

First, based on a review of the petition and decision in Plaintiff's prior Article 78

proceeding in New York State Supreme Court, Defendants appear to be correct that at least one

of the major issues in this case (i.e., whether Plaintiff's due process rights were violated during

his conviction and punishment following the disciplinary charges filed by Defendant Spina) has

already been litigated and decided.  (*See* Dkt. No. 52, Part 3, at 3-10 [Ex. A to Dougherty Affid.,

attaching Plaintiff's Petition]; Dkt. No. 52, Part 4, at 4-31 [Ex. B to Dougherty Affid., attaching

defendants Verified Answer and Objections in Point of Law, and supporting materials]; Dkt. No.

52, Part 5, at 2-5 [Ex. C to Dougherty Affid., attaching Decision and Order of Acting Supreme

Court Justice John Brunetti].)

Second, Defendants argue, among other things, that Plaintiff deliberately misled the

Court when, in his Complaint, he falsely averred that he had no other pending or state federal

actions relating to the same facts involved in his federal lawsuit (while, in fact, he had such a

pending action, namely, the aforementioned Article 78 proceeding in New York State Supreme

Court).  (Dkt. No. 52, Part 10, at 5-6 [Defs.' Mem. of Law].)  Plaintiff responds that he did not

mislead the Court, or at least did not do so intentionally.  (Dkt. No. 54, Plf.'s Mem. of Law, at 3-

4.)  The relevant portion of Plaintiff's Complaint is Part VI.D., wherein Plaintiff answered "No"

to the question, "Have you filed other lawsuits in state or federal court otherwise relating to your

imprisonment?"  (Dkt. No. 1, ¶ VI.D. [Plf.'s Compl.].)  Setting aside the issue of whether or not

Plaintiff's answer was false in the precise manner described by Defendants, I find that Plaintiff's

answer was false in another, more obvious regard: Plaintiff failed to disclose to the Court *any* of

the *eight* other state and federal court actions relating to his imprisonment that he had filed

before the date he signed his Complaint, September 30, 2005.[57]

Generally, such information is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1) whether any of the issues in the action have been previously litigated and decided (for purposes of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this action, earned "three strikes" for purposes of 28 U.S.C. § 1915(g); (3) whether the plaintiff had a record of frivolous litigation sufficient to warrant either (a) what is known as a "bar order" (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a), or (b) an order declaring plaintiff to be a "vexatious" litigator pursuant to 28 U.S.C. § 1927; and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the need to afford him special solicitude.  While a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff chose to provide the information and swore to the truthfulness of it.  Not even inexperience as a *pro se* litigant excuses such a misrepresentation to the Court.

---

[57]        *See Jackson v. Callisto*, Index No. 3926/2004 (Sup. Ct., Onondaga County) (Hon. John Brunetti) (Article 78 proceeding, filed circa 8/12/05); *Jackson v. N.Y.*, 02-CV-0089 (Fed. Cl.) (prisoner civil rights action, filed 1/30/02); *Jackson v. Lacy*, 97-CV-0353(TJM) (N.D.N.Y.) (habeas corpus petition, filed 3/14/97); *Jackson v. Murray*, 98-CV-1312(LEK) (habeas corpus petition, filed 8/17/98); *Jackson v. U.S.*, 99-CV-1781(TJM) (habeas corpus petition, filed 10/25/99); *Jackson v. Senkowski*, 00-CV-0240(TJM) (N.D.N.Y.) (habeas corpus petition, filed 2/9/00); *Jackson v. N.Y.*, Index No. 111904/2002 (Sup. Ct., St. Lawrence County) (Hon. S. Peter Feldstein) (unknown action against State of New York, filed 6/3/02, involving other prisoners); *Jackson v. Goodsman*, Index No. 011836/2005 (Sup. Ct., Westchester County) (Hon. Lester B. Adler) (Article 78 proceeding against correctional counselor, filed 8/30/05).

31

E.      **Doctrine of Qualified Immunity**

Because I have already concluded that adequate grounds exist upon which to base a recommendation of dismissal of Plaintiff's Complaint, I need not, and do not, reach the merits of Defendants' final alternative argument in favor of dismissal, namely, their qualified immunity argument.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 52) be **GRANTED**, and that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** in its entirety with prejudice; and it is further

**RECOMMENDED** that the Court certify in writing that any appeal taken from the Court's final judgment in this action would not be taken in good faith, for purposes of 28 U.S.C. § 1915(a)(3).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 8, 2008
        Syracuse, New York

George H. Lowe
United States Magistrate Judge